[Crim. No. 17336. In Bank. Sept. 23, 1974.]

In re ROBERT CHARLES JORDAN, JR., on Habeas Corpus.

## COUNSEL

Charles C. Marson, Peter E. Sheehan, Alice Daniel, William Bennett Turner, Lowell Johnston, Julian Fowles, Richard M. Gonzales and William D. Farber for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and W. Eric Collins, Deputy Attorney General, for Respondents.

## OPINION

**BURKE, J.**—In this case we consider the scope of the attorney-inmate confidential correspondence privilege set forth in Penal Code section 2600, subdivision (2).[1] We are asked to determine whether Director's Rule 2406,[2]

---

[1]Penal Code section 2600 provides in pertinent part as follows: "A sentence of imprisonment in a state prison for any term suspends all the civil rights of the person so sentenced, and forfeits all public offices and all private trusts, authority, or power during such imprisonment. But the Adult Authority may restore to said person during his imprisonment such civil rights as the authority may deem proper, except the right to act as a trustee, or hold public office or exercise the privilege of an elector or give a general power of attorney.

"     .     .     .     .     .     .     .     .     .     .     .     .     .

"This section shall be construed so as not to deprive such person of the following civil rights, in accordance with the laws of this state:

"     .     .     .     .     .     .     .     .     .     .     .     .     .

"(2)  To correspond, confidentially, with any member of the State Bar, or holder of public office, provided that the prison authorities may open and inspect such mail to search for contraband.

"     .     .     .     .     .     .     .     .     .     .     .     .     .

"(4)  To purchase, receive, and read any and all newspapers, periodicals, and books accepted for distribution by the United States Post Office. Pursuant to the provisions of this section, prison authorities shall have the authority to exclude obscene publications or writings, and mail containing information concerning where, how, or from whom such matter may be obtained; and any matter of a character tending to incite murder, arson, riot, violent racism, or any other form of violence; and any matter concerning gambling or a lottery. Nothing in this section shall be construed as limiting the right of prison authorities (i) to open and inspect any and all packages received by an inmate and (ii) to establish reasonable restrictions as to the number of newspapers, magazines, and books that the inmate may have in his cell or elsewhere in the prison at one time."

[2]Director's Rule 2406, subdivision (4), provides in pertinent part: "Attorneys communicating with inmates on legal matters may seek to enclose material with their letters, such as news articles, copies of cases or other information. The department does not view such material as being within the scope of the privilege granted by Penal

under which the Department of Corrections treats all printed enclosures in attorney-inmate mail as nonprivileged material, is consistent with the statutory rights afforded prisoners by section 2600. ■ We have concluded that Director's Rule 2406, to the extent that it authorizes prison authorities to read printed enclosures in attorney-inmate correspondence, is inconsistent with section 2600, subdivision (2), and therefore is invalid.

Petitioner is an inmate at California Medical Facility, Vacaville, having been convicted of violating Penal Code sections 207 (kidnaping) and 286 (sodomy). He does not challenge the validity of his convictions but seeks habeas corpus to vindicate rights to which he is allegedly entitled in confinement. (See *In re Harrell*, 2 Cal.3d 675, 682 [87 Cal.Rptr. 504, 470 P.2d 640].) Specifically petitioner attacks the Department of Corrections policy of reading all "enclosures" in attorney-inmate mail.[3] Petitioner argues that this enclosure exception to the attorney-inmate correspondence privilege violates his rights under Penal Code section 2600 as recently interpreted by this court in *In re Jordan*, 7 Cal.3d 930 [103 Cal.Rptr. 849, 500 P.2d 873].[4]

In *Jordan, supra,* we held that section 2600, subdivision (2), which permits prison authorities to open and inspect attorney-inmate mail to search for contraband, did not allow the reading of privileged mail in search of "verbal contraband." We noted that the Legislature's primary objective was preservation of confidentality and that it was necessary to restrict contraband to "physical matter" so as not to emasculate the section. (7 Cal.3d at p. 936.)

---

Code Section 2600, and so it may be examined in the same manner as all other non-privileged mail."

Under Director's Rule 2406, subdivision (3), incoming legal mail from a member of the State Bar registered with the institution is opened by a prison employee in the presence of the inmate to whom it is addressed. The privileged correspondence (which as we hold herein includes printed enclosures) is not read, although the letter is shaken out and inspected for prohibited contraband. We note that this type of inspection has recently been approved by the United States Supreme Court in *Wolff* v. *McDonnell* (1974) 418 U.S. 539, 573-577 [41 L.Ed.2d 935, 961-963, 94 S.Ct. 2963].

[3] An "enclosure" includes anything other than the attorney-inmate letter itself. The particular enclosures involved in petitioner's case were draft pleadings and a Xerox copy of an unreported decision, which were allegedly each related to petitioner's anticipated litigation regarding prison censorship practices and regulations prohibiting marriage. Examples of other enclosures which would be affected by rule 2406 are Xeroxed law review articles, affidavits and newspaper articles summarizing cases.

[4] We note that Penal Code section 2600 was recently considered in *Procunier* v. *Martinez*, 416 U.S. 396 [40 L.Ed.2d 224, 94 S.Ct. 1800]. That case, however, concerned prison censorship of personal mail and did not deal with the issue of confidential attorney-inmate correspondence.

*In re Jordan, supra,* 7 Cal.3d 930, did not directly involve the issue now raised, namely, what type of physical matter in addition to the attorney-inmate letter is to be considered confidential correspondence protected from examination. The case nevertheless provides guidelines to be followed in construing section 2600, subdivision (2). We said (at p. 936), "It is clear that the Legislature in authorizing inspections for contraband did not contemplate the censoring of attorney mail because of its content; such an interpretation would have patently defeated the confidentiality guaranteed by section 2600. We agree that the Department of Corrections has a legitimate interest in excluding from the prisons weapons, drugs, and other tangible items posing threats to prison security. But to limit the *subject matter* of inmate-attorney mail and to inspect such mail to ensure that the limitations are adhered to emasculates the confidentiality provision of section 2600." (Italics in original.) We also noted that there appears to be only a remote and wholly speculative danger that an attorney, sworn to obey the laws of this state, would assist a prisoner in avoiding legitimate prison regulations (*id.,* p. 937) or conspire in plots that threaten prison security (*id.,* p. 938). Throughout our opinion we expressed a deep concern for maintaining confidentiality and our trust in the integrity of attorneys.

It seems clear that printed enclosures such as Xeroxed cases and law review articles are not the types of tangible items which the Legislature contemplated as posing a serious threat to prison security.[5] In any event the department's policy regarding enclosures can have only minimal salutary effect given the relative ease of circumventing the rule. Presumably, under the current department policy, the attorney need only transcribe the printed matter in any enclosure onto his legal stationery and it would pass unread. Likewise, the fact that personal interviews with attorneys are not subject to auditory monitoring[6] emphasizes the futility of reading all enclosures in attorney mail in the hope of frustrating escape plans and avoiding violence. As we said in *In re Jordan, supra,* 7 Cal.3d 930, 938, "The determined conspirator who can hatch his plots during personal visits will be only slightly hindered, but not deterred, by a rule that hinders plotting by mail."

In construing section 2600, subdivision (2), we must consider the strong

---

[5]Illustrative of items which would threaten prison security are narcotics, liquors, weapons and explosives. The Penal Code specifically proscribes importation of these articles to prisons. (See Pen. Code, §§ 171a, 4573, 4573.5, and 4574.)

[6]Monitoring these visits is specifically prohibited by Penal Code section 636; case law firmly establishes the general principle that a prisoner has a right to consult with his attorney in absolute privacy, which right is not abrogated by the legitimate interests of prison authorities in the administration of the institution. (*In re Jordan, supra,* 7 Cal.3d 930, 937-938, fn. 3.)

policy favoring the attorney-client privilege.[7] In *In re Jordan, supra,* 7 Cal.3d 930, 940-941, we pointed out that ". . . the protection of confidences and secrets is not a rule of mere professional conduct, but instead involves public policies of paramount importance which are reflected in numerous statutes."[8] As examination of printed enclosures would not significantly enhance prison security, it seems doubtful that the Legislature intended to undermine the policy favoring the confidentiality of attorney-client communications by permitting unrestricted examination of such materials.

The People argue that, even under the rationale of our decision in *Jordan, supra,* those printed enclosures which are publications cannot be regarded as communications from anyone except the author or writer. This contention is not persuasive, particularly in light of the broad definition of "confidential communication" set forth in section 952 of the Evidence Code. That section in pertinent part provides: "As used in this article, 'confidential communication between client and lawyer' means *information* transmitted between a client and his lawyer in the course of that relationship . . . and *includes* a legal opinion formed and the advice given by the lawyer . . . ." (Italics added.) Certainly a law review article or a newspaper clipping of potential use to the inmate-client is information of the type properly protected by the privilege.

Nor are we persuaded by the People's contention that a publication which is in the public domain is somehow per se nonconfidential. Once an attorney has determined that a particular publication is relevant to his inmate-client's case, that publication may become an integral part of the attorney's legal advice or strategy and, as such, it would be entitled to section 2600, subdivision (2), protection.

Petitioner also challenges the Department of Corrections policy limiting the attorney-inmate confidential correspondence privilege to members

---

[7]The attorney-client privilege is set forth in Evidence Code section 954. Witkin notes that the older authorities are directly divided as to whether the attorney-client privilege should be liberally or strictly construed. (See Witkin, Cal. Evidence, Witnesses, § 795.) Whatever may be the better rule generally, *In re Jordan, supra,* 7 Cal.3d 930, mandates liberal construction as to the attorney-inmate privilege of Penal Code section 2600, subdivision (2). (See also *In re Harrell, supra,* 2 Cal.3d 675, 702 [cert. den. 401 U.S. 914 (27 L.Ed.2d 814, 91 S.Ct. 890)], holding that with regard to Pen. Code, § 2600, subd. (4) [right to purchase, receive, and read published writings] the civil rights of those convicted of crime be limited only in accordance with legitimate penal objectives.)

[8]See Business and Professions Code section 6068, subdivision (e) (duties of attorney); Evidence Code section 950 et seq. (lawyer-client privilege); and Penal Code section 636 (making it a felony to record conversation between a prisoner and his attorney without permission from all parties).

of the California State Bar.[9] First he argues that such a limitation is inconsistent with Evidence Code sections 950 and 954 (lawyer-client privilege). Although "lawyer" is defined in section 950 to include those "authorized to practice law in any state or nation," Penal Code section 2600, subdivision (2) (fn. 1, *ante*), which sets forth the civil right statutorily *restored to prisoners* is limited to "any member of the State Bar, or holder of public office." Therefore, the department's policy seems consistent with the language of section 2600. Petitioner, however, asserts that prisoners have a constitutional right to correspond confidentially with out-of-state attorneys.[10] Petitioner does not indicate his reasons for seeking counsel and makes only a general allegation that his correspondence with out-of-state attorneys is severely inhibited. ■ Without attempting to decide in the abstract the full extent of petitioner's rights in this regard, we hold that confidential correspondence is to be permitted, even though no California court order has been obtained, if the out-of-state attorney makes a reasonable showing to the prison authorities: (1) That he is duly authorized to practice law in his state; (2) that an attorney-client relationship exists; and (3) that this relationship concerns a pending criminal matter, or the conditions of his client's confinement, including any related application for extraordinary relief.[11]

Respondent is directed to cease enforcing Director's Rule 2406 of the Department of Corrections to the extent it is inconsistent with the views expressed herein.

Tobriner, J., Mosk, J., and Clark, J., concurred.

**WRIGHT, C. J.,** Concurring.—I join in the majority decision both as to the right of prison inmates to confidential correspondence with members of the State Bar of California and as to the conclusion that the right extends to correspondence with out-of-state attorneys with whom an

---

[9]Under the present Department of Corrections policy all out-of-state attorneys who have obtained an order from a California court granting the right to represent an inmate in a criminal proceedings are treated as California attorneys with regard to confidential correspondence. (Department of Corrections Administrative Bulletin No. 74/3, Feb. 22, 1974.) Other out-of-state attorney situations are not governed by any rule but are handled on a case by case basis.

[10]Petitioner contends that restricting confidential correspondence to California attorneys violates an inmate's constitutional rights to freedom of expression, to petition for redress of grievances, to access to the courts, to assistance of counsel, and to equal protection of the laws.

[11]We note that these conditions and particularly the limitation of the confidential privilege to criminal matters, appear to be consistent with recent dictum of the United States Supreme Court regarding the constitutional status of attorney-inmate correspondence. (*Wolff* v. *McDonnell* (1974) *supra,* 418 U.S. 539, 573-579 [41 L.Ed.2d 935, 961-964].)

attorney-client relationship exists. However, the majority hold only that a prisoner and his out-of-state attorney may correspond confidentially after an attorney-client relationship has been established. Implicit in the right to communicate confidentially with one's attorney is the right to confidentiality in those communications in which a prospective client solicits representation by an attorney. Since the majority do not expressly deny the right to confidentiality in those communications in which a prisoner seeks to retain the services of an out-of-state attorney, I interpret the holding of the majority to include such a right.

The right of a prison inmate to representation by counsel[1] extends to all matters, whether denominated civil or criminal, in which he retains his right of access to the courts. As the majority recognize this right exists at least as to pending criminal matters, applications for extraordinary relief, and matters related to the conditions of confinement. (See, e.g., In re Ferguson (1961) 55 Cal.2d 663 [12 Cal.Rptr. 753, 361 P.2d 417].)

■ A prisoner's right of access to the court for the purpose of redressing his rights necessarily includes the right to retain counsel to act for him. (In re Ferguson, supra, 55 Cal.2d 663.) Censorship of communications in which the prisoner seeks to obtain counsel unreasonably erodes the right of access to the courts by restricting the ability of the prisoner to fully and frankly set forth the factual matters upon which his claim is based. (Id., at p. 677.) Invasion of the confidential nature of the correspondence between a prisoner and an attorney whom he seeks to retain cannot be distinguished from censorship in its burden on the prisoner's right of access to the courts. It would be naive to assume, for instance, that a prisoner who accuses institutional officials of improprieties will freely commit his charges to paper knowing that the same officials who daily supervise his every activity will read that letter. ■ Since, as the majority acknowledges, the right to confidential communication with a retained out-of-state attorney may not be infringed, it follows that the confidentiality of prisoner communications seeking to retain out-of-state counsel also may not be infringed.

Although it has been suggested that review of prisoner mail to out-of-state attorneys is necessary to insure that the correspondence relates to

---

[1]We refer here not to the right of a criminal defendant to have the assistance of counsel in his defense, and to have appointed counsel if he is unable to retain private counsel (U.S. Const., Amend. VI; Cal. Const., art. I, § 13; Gideon v. Wainwright (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]), but to the generally recognized right of a litigant to be represented by counsel. (E.g., Code Civ. Proc., §§ 283, 1014.)

matters as to which the prisoner retains his right of access to the courts, i.e., to matters that are not purely civil litigation, it is difficult to believe that the number of such attempted purely civil communications is sufficient to warrant the restriction of confidentiality of attorney mail generally. No such objection is made with regard to correspondence addressed to California attorneys. Prisoners who are usually laymen, many of whom lack advanced education, cannot be expected to assess their claims to determine whether they are "purely civil." If the purpose of restricting communications relevant to "purely civil" matters is to implement the civil death statute (Pen. Code, § 2600) that purpose can be adequately served by enclosing with letters addressed to counsel who have not yet been retained a notice regarding the areas in which California prison inmates lack capacity to sue.

McComb, J., Tobriner, J., and Sullivan, J., concurred.