[Civ. No. 18114. Fourth Dist., Div. One. May 22, 1979.]

In re LINDA R. NAVARRO on Habeas Corpus.

**COUNSEL**

Donald L. Clark, County Counsel, Lloyd M. Harmon, Jr., Chief Deputy County Counsel, and Cameron Reeves, Deputy County Counsel, for Appellant.

Peter B. Clarke for Respondent.

## OPINION

**STANIFORTH, J.**—This case poses a narrow question. Is an attorney's act of handing a police report to the client a "communication" within the attorney-client privilege (Evid. Code, § 952)? We conclude such an act is a communication, is privileged and so affirm the superior court's granting the writ of habeas corpus and discharging the order of contempt.

Attorney Linda Navarro was subpoenaed as a witness in a preliminary hearing where Carlos Diaz, Jr., was charged with the killing of a fellow jail inmate. After being sworn as a witness, Navarro twice refused the magistrate's order to answer the question, "Did you show People's 4 for identification to Mr. Diaz?" Exhibit 4 was an arrest report of a robbery; its contents might provide a motive for the murder. Navarro was attorney of record for Diaz in a pending robbery case but did not represent him in the murder charge. Navarro asserted the attorney-client privilege as basis for her refusals to answer.

After the second refusal, the magistrate found Navarro in contempt and sentenced her to the county jail until she obeyed the court order. The magistrate found the question relevant and not within the attorney-client or any other privilege asserted. Navarro promptly sought a writ of habeas corpus in the superior court and upon hearing, the court granted the writ and discharged the contempt order. The municipal court appeals.

## DISCUSSION

Evidence Code section 952 provides: "As used in this article, 'confidential communication between client and lawyer' means *information transmitted between a client and his lawyer in the course of that relationship* and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." (Italics added.) ▮ If a "confidential communication between client and lawyer" exists, the client has a privilege protecting disclosure (Evid. Code, § 954), and the attorney

involved has an obligation to refuse disclosure unless a person authorized to permit disclosure instructs the attorney otherwise (Evid. Code, § 955).

■ The municipal court contends the attorney-client privilege is confined to matters which "emanate," are transmitted, from the client to the lawyer, not from third persons or the attorney. They cite *People* ex rel. *Dept. of Public Works* v. *Glen Arms Estate, Inc.* (1964) 230 Cal.App.2d 841, 860-861 [41 Cal.Rptr. 303]; *San Diego Professional Assn.* v. *Superior Court* (1962) 58 Cal.2d 194, 201-202 [23 Cal.Rptr. 384, 373 P.2d 448, 97 A.L.R.2d 761]) for this proposition. To make the communication privileged the dominant purpose must be for transmittal to an attorney in the course of professional relationship. (*People* ex rel. *Dept. of Public Works* v. *Glen Arms Estate, Inc. supra,* at p. 855; *Greyhound Corp.*v. *Superior Court,* 56 Cal.2d 355, 396 [15 Cal.Rptr. 90, 364 P.2d 266]; *City & County of S.F.* v. *Superior Court,* 37 Cal.2d 227, 235 [231 P.2d 26, 25 A.L.R.2d 1418].) In short, municipal court argues the present matter would not be privileged since the police report does not "emanate" from the client.

The municipal court overlooks significant changes in the law of attorney-client privilege. In 1965 new legislation (Evid. Code, § 950 et seq.) regarding attorney-client privilege was enacted. The authorities cited by the municipal court were decided under former Civil Procedure Code section 1881, subdivision (2), which provided: "An attorney cannot, without the consent of his client, be examined as to *any communication made by the client to him, or his advice* given thereon in the course of professional employment; nor can an attorney's secretary, stenographer, or clerk be examined, without the consent of his employer, concerning any fact the knowledge of which has been acquired in such capacity." (Italics added.) Thus, former section 1881, subdivision (2), extended the privilege only to "any communication made by the client to [an attorney]," whereas section 952 now expands the privilege to cover "information transmitted between a client and his lawyer." Thus such communications are now protected regardless of origin.

*In re Jordan,* 12 Cal.3d 575, 580 [116 Cal.Rptr. 371, 526 P.2d 523], supports this conclusion. There, the Supreme Court upheld the claim of privileged communication from an attorney to his client, a prison inmate. Jordan, the client and inmate at California Medical Facility, Vacaville, attacked director's rule 2406 by which prison authorities read enclosures

in inmate mail from their attorneys. The enclosures sent to Jordan were draft pleadings and a photocopy of an unreported decision. Relying in part on Evidence Code section 952, the Supreme Court found a confidential communication between attorney and client when the attorney mailed a public document to his client. The Supreme Court stated: "The People argue that, even under the rationale of our decision in *Jordan, supra,* [7 Cal.3d 930], those printed enclosures which are publications cannot be regarded as communications from anyone except the author or writer. This contention is not persuasive, particularly in light of the broad definition of 'confidential communication' set forth in section 952 of the Evidence Code. That section in pertinent part provides: 'As used in this article, "confidential communication between client and lawyer" means *information* transmitted between a client and his lawyer in the course of that relationship . . . and *includes* a legal opinion formed and the advice given by the lawyer. . . .' (Italics added.) Certainly a law review article or a newspaper clipping of potential use to the inmate-client is information of the type properly protected by the privilege." (*In re Jordan, supra,* 12 Cal.3d 575, 580.)　■　Nor is the public nature of the document dispositive. Said the Supreme Court: "Nor are we persuaded by the People's contention that a publication which is in the public domain is somehow per se nonconfidential. Once an attorney has determined that a particular publication is relevant to his inmate-client's case, that publication may become an integral part of the attorney's legal advice or strategy and, as such, it would be entitled to section 2600, subdivision (2), protection." (*Ibid.*)[1]

It may be argued that identification of subject matters discussed during a consultation will not disclose the actual content of the discussions. However, for published or public matter, knowing the identity of the document is equivalent to examining or reading the document. *Jordan* (12 Cal.3d 575, 580) would have no meaning if officials were allowed to compel identification of the document and then read it later from their own sources. It logically follows that the attorney-client confidentiality which *Jordan* enforces, includes the identification of the document transmitted.

---

[1]At that time Penal Code section 2600 provided in pertinent part as follows: "A sentence of imprisonment in a state prison for any term suspends all the civil rights of the person so sentenced, . . . ¶ . . . § This section shall be construed so as not to deprive such person of the following civil rights, in accordance with the laws of this state: ¶ . . . ¶ (2) To correspond, confidentially, with any member of the State Bar, or holder of public office, provided that the prison authorities may open and inspect such mail to search for contraband." In 1975 this statute was repealed and replaced by sections 2600 and 2601.

Additional authority supports the superior court's order. ■ A "communication" need not be exclusively verbal but may be by signs or actions or other means. (*City & County of S.F.* v. *Superior Court, supra,* 37 Cal.2d 227, 235-236.) In point is the observation in 8 Wigmore, Evidence (McNaughton rev. 1961) section 2307, page 594: "Where the document already had an independent existence and the communication consists in bringing its contents to the *attorney's* [read *'client's'* under Evid. Code, § 952 and *In re Jordan, supra*] *knowledge,* that *knowledge* is not to be disclosed by his testimony. . . . But the physical possession of the document is distinct from that knowledge, and to compel production of the document is not to compel the disclosure of the communication." And "the communication of a document is distinct from the document itself." (*Ibid.,* § 2308, p. 596.)

■ In sum, the district attorney seeks to compel Navarro to disclose *the fact of communication* of a public document relevant to the client's case discussed as an integral part of the lawyer-defendant strategy session. Such testimony would tend, possibly, to incriminate the client. Navarro would be required to disclose the area—the subject—of discussion with the client. No authority is cited, or disclosed by independent research, to support this species of invasion of a privileged area. The municipal court offers *People* v. *Lee,* 3 Cal.App.3d 514, 527 [83 Cal.Rptr. 715], as "analogous" on its facts. *Lee (supra)* is not in point. "[T]he testimony did not involve disclosure of confidential communications between defendant and his counsel." (*Id.,* at p. 527.) In *Lee* the information was given to the attorney by a third party, not the client. The *Lee* court applied the long-standing rule that an attorney must relinquish incriminating physical evidence to the police. At the same time, the court observed that the attorney cannot be forced to reveal the source of his evidence. (*Id.,* at p. 526; see also *State* v. *Olwell* 64 Wn.2d 828, [394 P.2d 681, 685; 16 A.L.R.3d, 1021] *Anderson* v. *State* (1974 Fla.App.) 297 So.2d 871.)

Although *In re Jordan* (12 Cal.3d 575) arose in the context of a prisoner seeking civil rights protected by former Penal Code section 2600, subdivision (2) [now covered by Pen. Code, § 2601, subd. (b)], the Supreme Court's reasoning and analysis of Evidence Code section 952 in *Jordan* compels our conclusion that a lawyer's act of handing a police report to his client (if such be the fact) was a confidential communication privileged under Evidence Code section 952. Navarro was dutybound to

raise that privilege on behalf of her client. (Evid. Code, § 955.) In so doing, she committed no act in contempt of court.

Order affirmed.

Brown (Gerald), P. J., and Buttermore, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.