[No. A044926. First Dist., Div. Four. July 21, 1989.]

In re MICHAEL ERIC GONZALES on Habeas Corpus.

**COUNSEL**

Donald Specter and Steven Fama for Petitioner.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Morris Lenk and Karl S. Mayer, Deputy Attorneys General for Respondent.

**OPINION**

**POCHÉ, J.—** ■ Petitioner, Michael Eric Gonzales, complains of the refusal of the Department of Corrections to allow him to correspond confidentially with his Canadian attorney regarding a Canadian divorce proceeding to which petitioner is a party. We agree that under Penal Code section 2600, he is entitled to exercise the right he claims.

Petitioner, a prisoner of the State of California, sought confidential mail privileges with his Canadian attorney. His request was denied on the ground that the attorney was not listed with a state bar association. Petitioner has exhausted available Department of Corrections administrative remedies and has been denied relief in the Marin County Superior Court. He now seeks relief in this court by petition for writ of habeas corpus. Attached to his petition is the declaration of Kevin Robb, who declares that he is a barrister and solicitor licensed to practice in the courts of British Columbia, Canada, and that he represents petitioner with respect to child custody and access arising from a divorce proceeding to which petitioner is a party.

In refusing to allow confidential mail privileges between petitioner and his Canadian attorney, the Department of Corrections was applying the director's rules found in the California Code of Regulations. These rules provide that correspondence with "[a]n attorney at law listed with a state bar association" will be treated as confidential correspondence. (Cal. Code Regs., tit. 15, § 3141, subd. (c)(5).) This means that the correspondence can be inspected only: (1) for contraband; or (2) to check to determine if the letter is actually to or from a person or office allowed to send or receive confidential mail. (*Id.,* § 3144.) Any inspection involving opening of mail will be in the presence of the inmate. (*Ibid.*) Attorney-inmate mail or the printed enclosures in the mail may not be read in search of " 'verbal contraband.' " (*In re Jordan* (1972) 7 Cal.3d 930, 936 [103 Cal.Rptr. 849, 500 P.2d 873], [*Jordan I*]; *In re Jordan* (1974) 12 Cal.3d 575 [116 Cal.Rptr. 371, 526 P.2d 523], [*Jordan II*].) If mail is not treated as confidential correspondence, it may be read by prison employees. "This reading of mail will be for cause only. Cause may include, but is not limited to, the belief by staff that regular nonconfidential mail sent to or received for an individual inmate poses a danger to a person, persons, the public, or serious threat to the security of the facility." (Cal. Code Regs., tit. 15, § 3138, subd. (a).)

The above rules stem from a provision in the statutory scheme for the protection of the civil rights of prisoners. Penal Code section 2600 provides that a prisoner may be deprived of only those rights as is necessary to provide for the security of the institution and the protection of the public. Section 2601 of the Penal Code then specifies certain civil rights accorded to prisoners. One of these rights is to "correspond, confidentially, with any member of the State Bar." (*Id.,* subd. (b).) In *Jordan II,* a prisoner challenged the Department of Corrections policy limiting the attorney-inmate confidential correspondence privilege to members of the California State Bar. The prisoner asserted "that prisoners have a constitutional right to correspond confidentially with out-of-state attorneys." (*In re Jordan, supra,* 12 Cal.3d at p. 581, fn. omitted.) The court in a footnote stated that petitioner was contending that the restriction violates "an inmate's constitutional rights to freedom of expression, to petition for redress of grievances, to access to the courts, to assistance of counsel, and to equal protection of the laws." (*Id.,* at p. 581, fn. 10.) Without explaining its reasoning, the court held that "confidential correspondence is to be permitted . . . if the out-of-state attorney makes a reasonable showing to the prison authorities: (1) That he is duly authorized to practice law in his state; (2) that an attorney-client relationship exists; and (3) that this relationship concerns a pending criminal matter, or the conditions of his client's confinement, including any related application for extraordinary relief." (*Id.,* at p. 581, fn. omitted.)

The Attorney General in opposition to this petition points out that *Jordan II* concerns only confidentiality of mail between an inmate and an

out-of-state attorney. The Attorney General contends that *Jordan II* does not apply because the third condition to confidential communication does not exist, i.e., that the attorney-client relationship concern "a pending criminal matter, or the conditions of his client's confinement." The reason for this condition is not explained in the opinion itself. The entire seven-justice court agreed on the majority opinion which held that prison personnel could not read the printed enclosures in attorney-inmate mail and that attorney-inmate confidentiality applies to correspondence between an inmate and an out-of-state attorney. Four justices signed a concurring opinion which interprets the holding of the majority to include the right of confidentiality in those communications in which a prisoner *seeks* to retain the services of an out-of-state attorney. The last paragraph of the concurring opinion explains why the concurring justices would not impose a condition that the attorney-client relationship concern a pending criminal matter. This paragraph reads: "Although it has been suggested that review of prisoner mail to out-of-state attorneys is necessary to insure that the correspondence relates to matters as to which the prisoner retains his right of access to the courts, i.e., to matters that are not purely civil litigation, it is difficult to believe that the number of such attempted purely civil communications is sufficient to warrant the restriction of confidentiality of attorney mail generally. No such objection is made with regard to correspondence addressed to California attorneys. Prisoners who are usually laymen, many of whom lack advanced education, cannot be expected to assess their claims to determine whether they are 'purely civil.' If the purpose of restricting communications relevant to 'purely civil' matters is to implement the civil death statute (Pen. Code, § 2600) that purpose can be adequately served by enclosing with letters addressed to counsel who have not yet been retained a notice regarding the areas in which California prison inmates lack capacity to sue." (*In re Jordan, supra,* 12 Cal.3d at pp. 582-583.)

If, as the concurring opinion suggests, the restriction in question was to implement the civil death statute of former section 2600 of the Penal Code, the reason no longer exists. In 1974, when *Jordan II* was decided, former section 2600 commenced with the proviso: "A sentence of imprisonment in a state prison for any term suspends all the civil rights of the person so sentenced. . . ." That provision was repealed in 1975. (Stats. 1975, ch. 1175, § 2, p. 2897.) Section 2600 now provides: "A person sentenced to imprisonment in a state prison may, during any such period of confinement, be deprived of such rights, and only such rights, as is necessary in order to provide for the reasonable security of the institution in which he is confined and for the reasonable protection of the public."

The Supreme Court has held that reading attorney-client mail is *not* necessary in order to provide for the reasonable security of the institution.

In *Jordan I,* the court said that to limit the subject matter of inmate-attorney mail and to inspect such mail to ensure that the limitations are adhered to emasculates the confidentiality of that mail. (*In re Jordan, supra,* 7 Cal.3d at p. 937.) The court noted in this regard that "there appears to be only a remote and wholly speculative danger that an attorney, sworn to obey the laws of this state, would assist a prisoner in avoiding legitimate prison regulations [citation] or conspire in plots that threaten prison security [citation]." (*Jordan II,* 12 Cal.3d at p. 579, citing and explaining its reasoning in *Jordan I.*) It seems to us that an attorney licensed to practice law in Canada and representing a California inmate in a child custody matter in Canada poses no greater threat to the security of the prison or the general public. We conclude that Penal Code section 2600 requires that the mail between attorney-client in this situation be accorded the same confidentiality as any other attorney-client mail.

The Department of Corrections is directed to allow the confidential mail privilege requested by petitioner.

Anderson, P. J., and Perley, J., concurred.

Petitioner's application for review by the Supreme Court was denied October 11, 1989.